J. M. BLANCO, INC., Plaintiff and Appellee, *v.* SUPPLY COMMITTEE OF THE INSULAR GOVERNMENT, Defendant and Appellant.

No. 6977.   Argued April 8, 1936.—Decided November 16, 1936.

*B. Fernández García, Attorney General* (*Benjamin J. Horton* on the brief) and *Tomás Torres Pérez* for appellant. *James R. Beverley* and *Gabriel de la Haba* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

The plaintiff corporation, resorting to the Uniform Declaratory Judgment Act, requests the determination of certain differences which have arisen in connection with a

contract with the defendant to supply certain articles to the Insular Government.

■ This is a case in which the transcript of the evidence has not been sent up to this court. The record shows only the judgment roll and the briefs of the parties. In the statement of the case the lower court makes its findings of fact and conclusions of law. As to the findings of fact we must presume that the lower court made them in conformity with the evidence presented. On these findings we shall base our opinion on the questions raised.

■ On May 5, 1933, the Supply Committee of the Insular Government, through the Bureau of Supplies, Printing, and Transportation, issued public call no. 130 for bids to supply laboratory and pharmaceutical articles. The corporation J. M. Blanco, Inc. submitted bids and was awarded the contract, for items 466, 664, 666, and 668, among others which appear on the sheet of the conditions of public call no. 130 which, together with other documents offered in evidence and admitted by the court, make up the contract between the plaintiff and the defendant. On the said sheet of conditions are listed, and numbered correlatively, all the products to be purchased, the amount per unit, the probable consumption in units, and the net price per unit. The probable consumption of units of the items awarded to the plaintiff was 24 kilograms of sulphate of quinine with regard to item 466, 23 boxes of ampules of bichloride of quinine as to item 664, 5 boxes of ampules of bichloride of quinine as to item 666, and 5 boxes of ampules of bichloride of quinine as to item number 668.

Among the general conditions stated in the sheet of conditions, there is one, number 13, reading as follows:

"As it is impossible to determine the exact quantities of the different classes of articles described in this call which the Insular Government may require during the period of the contract, all bidders whose bids are accepted will be bound to furnish the articles awarded to them in such quantities as may be required during the term of the contract. The orders for these articles will be issued as

the need for them arises. The quantities which appear in the ''Probable Consumption'' column are given for information only, and shall not relieve the Bureau of Supplies, Printing and Transportation of the obligation of ordering from the contractors all such articles as, in the judgment of the different officials of the Insular Government, may be needed by the institutions and offices in their charge, and in no case shall they relieve the contractor of the obligation of filling all orders which may be issued in his favor for the articles awarded to him. No offer will be considered which imposes the condition that the Insular Government is to take a fixed quantity of one or more of the articles called for.''

The said contract for the supply of the material awarded to the plaintiff was for the term of six months, beginning on July 1, 1933, and ending, therefore, on December 31, 1933. When the contract had been running for three months, the Bureau of Supplies, Printing and Transportation had ordered the plaintiff to deliver only about 15½ kilograms of sulphate of quinine of item number 466, and about 15 boxes of ampules of bichloride of quinine of item number 664, and by the date of the complaint, December 6, 1933, the plaintiff had been asked to deliver 75 kilograms of sulphate of quinine of item number 466, 37 boxes of ampules of item 664 and 8 boxes of ampules of item 668.

On September 28, 1933, the defendant, through the Bureau of Supplies, Printing, and Transportation, issued an order to the plaintiff for the delivery of 175 kilograms of sulphate of quinine of item number 466 and again, on October 23, 1933, the defendant, through the said Bureau, ordered plaintiff to deliver, in accordance with its contract, 927 kilograms of sulphate of quinine of item number 466, 7,500 ampules of item 664, 5,000 ampules of item number 666 and 5,000 ampules of item number 668.

The total of the sulphate of quinine ordered by the defendant from the plaintiff on account of item number 466 in the two last mentioned orders amounted to 1,102 kilograms when the plaintiff had already delivered on his contract 75 kilograms of sulphate of quinine of the said item, that is, more

than three times the probable consumption estimated in the column of the general sheet of the conditions of the call, and had delivered a quantity of ampules which fluctuates between three and ten times more than was stipulated in the probable consumption column of the sheet of general conditions of the call.

The plaintiff refused to make delivery on the orders of September 8 and October 23, 1933, contending that the amounts ordered by the Bureau of Supplies, Printing and Transportation were unreasonable and far beyond what the parties had in mind when the contract was made as the probable consumption of the different departments of the Insular Government for the semester of July 1 to December 31, 1933, and that the orders were not for the Insular Government or its different departments but for an entity called the Puerto Rican Emergency Relief Administration, which is a part of the Federal Government and which the plaintiff was not bound to serve.

The evidence clearly shows, from the orders of the defendant, that the orders of September 28 and October 23, 1933, were for the Puerto Rican Emergency Relief Administration, since each and every one of the said orders was authorized by its administrator Mr. James R. Bourne. to be charged against the funds of the said administration and to be delivered to the Bureau of Malaria of the Insular Department of Health.

To the preceding statement of facts, which we have copied from the statement of the case of the lower court, we must add that the plaintiff alleges that "but for the funds sent by the Federal Government for Emergency Relief in Puerto Rico, a part of which was set apart by the Federal Administrator for the purchase of drugs and chemical products, the approximate or probable consumption of the Insular Government would not have exceeded the amounts fixed in the contract, or if it had exceeded these amounts, the total would not have been greater than the amounts delivered by the

plaintiff on items numbers 466, 664, 666, and 668 of the contract."

The lower court, after holding that the contract which has given rise to this controversy lacks mutualness and that the plaintiff was not bound to fill the orders sent to it, because they were excessive, expresses itself as follows, ratifying its conclusion that the said orders were for the Puerto Rican Emergency Relief Administration:

"We have thoroughly studied the federal legislation by virtue of which the Puerto Rican Emergency Relief Administration functions and have heard the testimony of its Administrator in Puerto Rico Mr. James R. Bourne, as well as that of the engineer Mr. Edward E. Saldaña, and we find that the Puerto Rican Emergency Relief Administration is a federal agency which functions in this Island under the auspices of the Federal Government, with federal officials and funds of the Federal Government. This is shown by the fact that the said administration, according to the testimony of Messrs. Bourne and Saldaña, is not bound to acquire supplies through the Bureau of Supplies, Printing and Transportation, and that on the date of the trial it had ceased to utilize the services of this insular agency and had its own purchasing department and held its own calls for bids, whereas if it had been and continued to be an agency or part of the Insular Government, it would necessarily, according to the provisions of the Act of March 13, 1907 and of Joint Resolutions number 14 and 19, of April 13, 1916 and July 10, 1923, have had to continue acquiring materials and supplies through the agencies of the Insular Government known as the Supply Committee and the Bureau of Supplies, Printing and Transportation.

"The appropriation of funds by the Federal Government for The People of Puerto Rico from the federal funds of the Emergency Relief Administration, to be utilized by the Puerto Rican Emergency Relief Administration, does not imply an absolute donation or assignment of such funds to The People of Puerto Rico, as was verified by the testimony of Luis E. Morales, acting head of the accounts division of the office of the Auditor of Puerto Rico, who testified that the money received was kept in a special fund or 'Trust fund' known as the 'Puerto Rico Emergency Relief Fund', of which Manuel V. Domenech, Treasurer of Puerto Rico, was the custodian by appointment of the 'Reconstruction Finance Corporation', which money had never been mixed with the insular funds, its sole admin-

istrator being, as stated before, Mr. James R. Bourne, without whose order no disbursement could be made. The administrator is not responsible for his acts to the Governor of Puerto Rico, or to any other insular authority, and his appointment originated in the *Federal Emergency Relief Act* of 1933. And the fact that those funds are remitted at the request of the Governor and are applied in part, through requisitions of the Insular Commissioner of Health approved by the Federal Emergency Relief Administrator to the purchase of medicines for the campaign against malaria, said campaign being considered as emergency relief, does not convert these federal funds, thus employed for purposes within the province of the Insular Commissioner of Health, into insular funds.

"In the opinion of this Court, the Bureau of Supplies, Printing and Transportation in issuing its orders of September 28, and October 23 to the plaintiff to supply certain quantities of the articles called for in items nos. 466, 664, 666, and 668, was ordering articles for the Puerto Rican Emergency Relief Administration, a federal agency which is not a part of the Insular Government or of any of its offices or departments, within the stipulations set forth on the sheet of conditions and especially within the provisions of clause number 13 itself, which forms part of the general conditions of the said sheet and of the contract, and that therefore the plaintiff was within its rights in refusing to supply articles of the items awarded to it, for the use or consumption of entities other than the Insular Government, or its departments, offices or dependencies; and that the Puerto Rican Emergency Relief Administration could not attempt, nor could the defendant permit, the use of the plaintiff's contract to bind the plaintiff to supply materials of the class included in the call, to persons other than those determined in the same and in accordance with the law creating the Supply Committee, Joint Resolution No. 14 of April 13, 1936 (Laws, p. 194), as amended by Joint Resolution No. 19 of July 10, 1923 (Laws, p. 704)."

On the basis of the foregoing conclusions the lower court ends by saying:

"(c) That the orders of September 28 and October 23, 1933, made by the Bureau of Supplies, Printing and Transportation, were for the Puerto Rican Emergency Relief Administration, a federal entity, which was not a part of the Insular Government, or of any of its departments, offices or dependencies, and therefore the plain-

tiff J. M. Blanco, Inc. was not bound to supply the said orders on account of its contract for supplies, and that said orders, when delivered by the defendant to the plaintiff, were only an offer to purchase at the prices stipulated in the original contract between the parties, which could be accepted or rejected by the plaintiff, and that the latter was justified in refusing to fill the said two orders.''

The parties argue, from their respective points of view, two questions dealing with the construction of the contract alleged in the complaint. In the first place it is contended that neither the Insular Department of Health nor the Supply Committee had in mind a consumption greater than double the amounts fixed in the sheet of conditions, and that the plaintiff could not foresee that the said consumption would reach a figure greater than twice the amount estimated for consumption, by the Department of Health as well as by the Supply Committee. For these reasons it is argued that the plaintiff is not bound to supply the articles ordered. In the second place it is contended that the parties could never have had in mind or foreseen that the plaintiff would have to deliver exorbitant or large amounts of the products or articles awarded to it, for any outside person or entity, or for the Federal Government, at the price and on the conditions stipulated in the said contract. It is added that were it not for the funds assigned by the General Administrator for the purchase of drugs and chemical products, the approximate or probable consumption of the Insular Government would not have exceeded the amounts fixed in the contract. So that the fundamental question which is really being argued is whether or not the plaintiff was bound to supply the articles requested by an entity foreign to the Insular Government and payable from funds of the said entity. The contract does not impose the obligation which it is sought to demand of the plaintiff. The court which heard and weighed the evidence so understood it in supporting the action of the plaintiff-appellee in refusing to supply the said articles. If, as the said court says, the money used was not

592

donated to the Insular Government, if the said money was kept in a special fund called the "Puerto Rico Emergency Relief Fund", of which Manuel V. Domenech, Treasurer of Puerto Rico, was the custodian by appointment of the Reconstruction Finance Corporation, if this money was never mixed with the insular funds, its sole administrator being Mr. James R. Bourne, without whose order no disbursement could be made, it is clear and evident that the said money never became the property of the Insular Government, and that therefore the plaintiff, even if it had been bound to supply the said articles, in accordance with the contract, to the Government of Puerto Rico, could not be bound to fill the orders of any other entity.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.